## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE RICE, ALEX KUKICH, ERIKA MENDOZA, and JAMES HUNT, Individually, and on behalf of all others similarly situated, | No. 4:15-CV-00371 |
| | (Judge Brann) |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC.; LOWE'S HOME CENTERS, LLC; MODESTO DIRECT APPLIANCE, INC.; and ABC CORP. 1-10, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 13, 2020

## I.    BACKGROUND

On January 15, 2020, the Court ruled on Defendants' earlier motions to dismiss.[1]  Plaintiffs have moved for reconsideration of that ruling.  In the alternative, Plaintiffs seek certification of this Memorandum Opinion's accompanying Order to the United States Court of Appeals for the Third Circuit.[2]

---

[1]   *See* Docs. 247 and 248 (the Court's decision); *see also* Docs. 206, 208, 209, 210, and 211 (Defendants' earlier motions).

[2]   *See* Doc. 250.

On July 28, 2015, the Court dismissed with prejudice Plaintiff Elaine Rice's tort-based claims that she had premised on economic loss.[3]  Plaintiffs have moved under Federal Rule of Civil Procedure 60(b)(6) for relief from this final judgment.[4]

This Memorandum Opinion, and the accompanying Order, dispose of Plaintiffs' pending reconsideration and Rule 60(b)(6) motions.  Plaintiffs' motion for reconsideration is granted in part and denied in part.  Plaintiffs' Rule 60(b)(6) motion is denied.

## II.   DISCUSSION

### A.   Motions for Reconsideration

Parties use motions for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence."[5]  A district court may grant a motion for reconsideration only if the movant establishes one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice.[6]

### B.   Rule 60(b)(6) Motions

Federal Rule of Civil Procedure 60(b)(6) "is a catch-all provision that authorizes a court to grant relief from a final judgment."  "[C]ourts are to dispense

---

[3]   *See* Doc. 25 at ¶ 3.
[4]   *See* Doc. 264; *Heffernan v. Hunter*, 189 F.3d 405, 408 (3d Cir. 1999).
[5]   *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)
[6]   *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013).

their broad powers under Rule 60(b)(6) only in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."[7]  This determination requires a "full, case-specific analysis."[8]  "[I]ntervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)."[9]

### C.    Retransfer Under 28 U.S.C. § 1631

Title 28 U.S.C. § 1631 ("Section 1631") provides that if a district court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed.  Where jurisdiction over a defendant is lacking, there is a rebuttable presumption in favor of transfer.[10] While the plain text of Section 1631 refers to the transfer of a complete "action," the Third Circuit has confirmed that a district court can transfer an individual claim using Section 1631.[11]  However, that is done largely in scenarios "where a case could have been brought against some defendants in the transferee district," but for "the remaining defendants," "transfer would not be proper."[12]  Further, "before dividing the case, the District Court should weigh the factors favoring transfer

---

[7]   *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (cleaned up).
[8]   *Id.*
[9]   *Id.* at 121 (emphasis in original).
[10]  *See Abunasser v. Holder*, 343 F. App'x 756, 759 n.3 (3d Cir. 2009).
[11]  *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009).
[12]  *Id.*

against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums."[13]

In my January 15, 2020 Memorandum Opinion ("the January 2020 Opinion"), I held that the Court lacked personal jurisdiction over Sharp Thailand and Midea China, two foreign entities that manufactured Plaintiff Erika Mendoza and Plaintiff James Hunt's Microwaves, respectively.[14]  I also denied Plaintiffs' request to retransfer Mendoza, Hunt, and Plaintiff Dean Mauro's subcomponent cases back to their home jurisdictions: the Eastern District of California and the Northern District of New York, respectively.  I gave two independent reasons for this denial.[15]

### 1.    The August 2018 Opinion

First, I cited my previous Memorandum Opinion of August 20, 2018 ("the August 2018 Opinion"), in which I consolidated the subcomponent cases in question.[16]  I held that because of this previous consolidation, it was not "in the interest of justice" for the Court to then retransfer the subcomponent cases.[17]

In the August 2018 Opinion, I analyzed Mendoza and Hunt's previous motion for retransfer to the Eastern District of California.  As an alternative to

---

13  *Id.* at 111.
14  Doc. 247 at 10-11, 24, 26.  The Court directs the reader to refer to the January 2020 Opinion, at Doc. 247, for terms that this Memorandum Opinion does not define and for a recitation of the underlying facts and procedural history of this action.
15  Doc. 247 at 26-27.
16  *See* Doc. 158 at 2, 12.
17  Doc. 247 at 26-27.

retransfer, Mendoza and Hunt had requested consolidation of their action with the actions filed by Plaintiffs Rice, Alex Kukich, and Mauro.[18]

In the August 2018 Opinion, I found that the Court had personal jurisdiction over the defendants in question.  This jurisdictional finding removed the basis for retransfer.[19]  Further, I found that consolidating this case's subcomponent actions was appropriate.  In making this finding on consolidation, I absorbed multiple arguments that Plaintiffs, who "[bore] the burden of demonstrating [consolidation's] appropriateness," put before the Court.[20]  The factors I found most important were (a) the "general factual background" of the subcomponent actions, which all involved "a potentially defective stainless steel microwave handle," and (b) the subcomponent actions' "substantially similar and at times overlapping legal claims."[21]

I also noted that consolidation "for discovery and pre-trial management" had three "considerable" benefits.[22]  First, it would afford the Court the chance to address common facts and legal issues "on one occasion and in one opinion."[23]  Second, the parties could benefit from sharing completed discovery and would receive "the ability to respond to the opposing parties' arguments in one

---

[18]  *See* Doc. 158 at 2.
[19]  *See* Doc. 158 at 6-11.
[20]  *See* Doc. 158 at 13.
[21]  Doc. 158 at 15.
[22]  Doc. 158 at 16.
[23]  Doc. 158 at 17.

consolidated pleading rather than across three docket sheets."[24]  Third, "and

perhaps most persuasively," the Court believed that "consolidation, while

potentially slowing the process of the *Rice/Kukich* action as it currently stands, will

ultimately result in expedited resolution of *all issues* before the Court."[25]

### 2. *In re IMMC Corp.* **and** *Danziger & De Llano, LLP*

As a second reason for denying retransfer, I cited the Third Circuit's

decision in *In re IMMC Corp.*[26]  In *IMMC*, the Third Circuit stated that "we read

[Section] 1631 as intending to permit transfer to remedy a lack of statutory

jurisdiction only."[27]  I reasoned that because here, "the jurisdictional defect [was]

jurisdictional and not statutory," the Court could not employ Section 1631 to

retransfer.[28]

Plaintiffs cite *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*,[29] which

the Third Circuit decided the same day as my January 2020 Opinion.  In *Danziger*,

the Third Circuit held that "a district court that lacks personal jurisdiction must at

least consider a transfer" under Section 1631.[30]  Because personal jurisdiction is a

form of constitutional jurisdiction, this, in the Court's view, implicitly overrules

the Third Circuit's prior decision in *IMMC*.  Further, the Third Circuit held that,

---

[24]   *Id.*
[25]   *Id.* (emphasis in original).
[26]   909 F.3d 589, 596 (3d Cir. 2018).
[27]   *Id.*
[28]   Doc. 247 at 27.
[29]   948 F.3d 124, 132 (3d Cir. 2020).
[30]   *Id.*

when in this posture, a district court "must make some findings under [Section] 1631, at least when the parties identify other courts that might be able to hear their case."[31]  However, the Third Circuit also cited existing case law holding that a district court has "broad discretion" not to transfer and that a district court "need not investigate on its own all other courts that 'might' or 'could have' heard the case."[32]

### 3.    Personal Jurisdiction

A party seeking transfer under Section 1631 must show that "the claim or claims could have been properly brought in the intended transferee court."[33] However, this is a "light" burden that "requires only a *prima facie* showing of jurisdiction.[34]

With respect to Mendoza and Hunt, Plaintiffs have satisfied their burden to make a *prima facie* showing of the Eastern District of California's personal jurisdiction over Midea China and over Sharp Thailand.[35]  Further, Plaintiffs have made a *prima facie* showing of personal jurisdiction in the Eastern District of

---

[31]  *Id.*

[32]  *Id.*

[33]  *Graham Eng'g Corp. v. Brunelle*, No. 1:18-CV-405, 2020 WL 473375, at *7 (M.D. Pa. Jan. 28, 2020).

[34]  *In re Milo's Dog Treats Consol. Cases*, No. CIV.A. 12-1011, 2013 WL 6058461, at *3 (W.D. Pa. Nov. 18, 2013).

[35]  *See Mendoza et al v. Electrolux Home Products, Inc.*, Case No. 4:17-cv-02028-MWB, Doc. 107 at 11-14.

California with respect to the other defendants in Mendoza and Hunt's action: Sharp America,[36] Midea America,[37] Electrolux,[38] Lowe's,[39] and Modesto.[40]

But with respect to Mauro, Plaintiffs have not satisfied their burden to make a *prima facie* showing of the Northern District of New York's personal jurisdiction over Midea China and over Sharp Thailand.  Further, Plaintiffs are not entitled to receive jurisdictional discovery from Midea China and Sharp Thailand.  A plaintiff may receive jurisdictional discovery when the plaintiff "presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state."[41]  After review of this case's docket and of Plaintiffs' arguments for retransfer, the Court concludes that Plaintiffs have not presented such factual allegations with respect to Midea China's and Sharp Thailand's contacts with New York.

Accordingly, the Court denies Plaintiffs' motion for reconsideration in part – that is, the portion of the motion that targets the Court's decision to deny retransfer of Mauro's claims against Midea China and Sharp Thailand.

---

[36]  *See id.*
[37]  *See* Doc. 174 at ¶¶ 69, 71.
[38]  *See* Doc. 174 at ¶¶ 5, 66, 69.
[39]  *See* Doc. 174 at ¶ 46.
[40]  *See* Doc. 174 at ¶ 38.
     The Court emphasizes that this is a "light" burden and reiterates that these defendants have avenues to further challenge the jurisdictional issue in the Eastern District of California.
[41]  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (cleaned up).

### 4.    Interest of Justice

Having disposed of Mauro's challenge on jurisdictional grounds, the Court now turns to the second step of the analysis: whether retransfer of Mendoza and Hunt's claims against Midea China and Sharp Thailand back to the Eastern District of California would be in the interest of justice.  Here, as I stated earlier, the Court carries a rebuttable preference for transfer.[42]  However, if (a) transfer unfairly benefits the proponent; (b) transfer would impose an unwarranted hardship on the objector; or (c) transfer would unduly burden the judicial system, this can be enough to rebut the presumptive preference for transfer.[43]

The Court finds that retransfer would not unfairly benefit Plaintiffs Mendoza and Hunt.  Plaintiffs Mendoza and Hunt currently reside in California, which is where they originally filed their subcomponent lawsuit.  Further, the Eastern District of California is capable of applying its own state law.

Defendants have presented no substantive argument that transfer would impose an unwarranted hardship on them—and the Court notes that Defendants' law firms each maintain offices in California.  Finally, transfer would not unduly burden the judicial system here, as the Eastern District of California is more than capable of adjudicating the substantive and procedural legal issues that this case presents.

---

[42]    *See Abunasser v. Holder*, 343 F. App'x 756, 759 n.3 (3d Cir. 2009).

[43]    *See Pac. Employers Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011).

In conclusion, the Court finds that retransfer of Mendoza and Hunt's claims against Midea China and Sharp Thailand back to the Eastern District of California would be in the interest of justice.[44]  This compels reconsideration and modification of the Court's earlier retransfer decision with respect to Mendoza and Hunt's claims against Midea China and Sharp Thailand.  Further, the Court finds that it would be duplicative, inefficient, and potentially contradictory for Mendoza and Hunt to prosecute their claims against Midea China and Sharp Thailand in the Eastern District of California, but then prosecute the same claims against the remaining defendants here in the Middle District of Pennsylvania.  If Mendoza and Hunt have made at least a *prima facie* showing of personal jurisdiction over all the defendants in their lawsuit – and, as above, they have – it does not make sense to sever their lawsuit on a defendant-by-defendant basis.  This is especially resonant given that the rationale for the Court's initial consolidation of these matters has substantially dissipated – discovery is complete, and Mendoza and Hunt's California law claims present different legal issues and different points of substantive legal analysis than do the other plaintiffs' claims.  Therefore, the Court will proceed by retransferring Mendoza and Hunt's entire action – that is, all of their claims – back to the Eastern District of California.

---

[44]   *See Campbell v. Mars, Inc.*, No. CV 16-4035, 2016 WL 6901970, at *3 (E.D. Pa. Nov. 22, 2016).

### D.    Personal Jurisdiction Over Sharp America

In the August 2018 Opinion, I held that, per Pennsylvania's long arm statute[45] and the Third Circuit's holding in *Bane v. Netlink, Inc.*,[46] Defendant Sharp America had consented to the general personal jurisdiction of Pennsylvania courts by virtue of registering to do business in Pennsylvania.[47]  Plaintiffs now argue that potential future Pennsylvania state court appellate decisions might render Pennsylvania's long arm statute unconstitutional.  Plaintiffs then argue that "[b]ecause personal jurisdiction over [Sharp America] remains in doubt, the [Court's previous] dismissal of claims with prejudice was erroneous."[48]

This argument is not persuasive.  The *potential* existence of an upcoming Pennsylvania state court appellate decision, which *might* disturb a Third Circuit decision that this Court relied on, is not "an intervening change in controlling law." Nor does it present the Court with "the need to correct a clear error of law or prevent manifest injustice."[49]

---

[45]  42 Pa. C.S.A. § 5301.
[46]  925 F.2d 637, 641 (3d Cir. 1991).
[47]  Doc. 158 at 9-11.
[48]  Doc. 253 at 4 n.1.
[49]  The Court notes recent cogent discussion from United States District Judge Wendy Beetlestone on the continued viability of *Bane*.  *See Smith v. NMC Wollard, Inc.*, No. CV 19-5101, 2020 WL 1975074, at *2-*3 (E.D. Pa. Apr. 24, 2020).

Further, Plaintiffs' assertion that the supposed uncertainty of *Bane* "lends further support to Plaintiffs' § 1292(b) request for interlocutory appeal, Doc. 253 at 4 n.1, is misplaced. Leaving *Bane* aside, Plaintiffs have not shown that reversing the Court's decision to dismiss Sharp America with prejudice "[might] materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see generally Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J. 1993) ("Typically, section 1292(b) is applied in situations where, if the trial court decision were reversed on appeal, the litigation would then end.").

### E. Amendment of Mendoza and Hunt's California Law Claims

In the January 2020 Opinion, I dismissed with prejudice Mendoza and Hunt's California Consumer Legal Remedies Act and Unfair Competition Law claims against Defendants Electrolux, Lowe's, and Modesto.[50]  As Plaintiffs note, despite this case's operative complaint's status as an "Amended Consolidated Class Action Complaint,"[51] my January 2020 Opinion was the first time a court had confronted the legal sufficiency of Mendoza and Hunt's California law claims.[52]  Given the lenient and permissive standards around amendment, it would not be futile to grant Plaintiffs leave to amend their complaint with respect to the sufficiency of Mendoza and Hunt's California law claims.[53]

Therefore, the Court's decision to dismiss these claims with prejudice, without granting Plaintiffs leave to amend, was "a clear error of law" that the Court needs to now correct.  The Court grants Plaintiffs leave to amend their complaint with respect to the sufficiency of Mendoza and Hunt's California law claims.  (Of course, this amendment, if Plaintiffs care to undertake it, will happen in the Eastern District of California, as I explained above.)

---

[50]  Doc. 247 at 37-39.
[51]  *See* Doc. 174.
[52]  *See* Doc. 253 at 19-20.
[53]  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

### F.      Kukich and Mauro's Implied Warranty Arguments

In the operative complaint, Kukich and Mauro each raised implied warranty claims.[54]  Electrolux, Lowe's and Modesto raised statute of limitations defenses in their original motion to dismiss.[55]

Plaintiffs, when they opposed the original motion to dismiss Kukich's claims, argued that Electrolux had "fail[ed] to articulate how the parties agreed to reduce the [four-year] limitation period."  Plaintiffs also argues that "reducing the statute of limitations is unconscionable here, and Electrolux should be equitably estopped from applying a reduced, one-year limitations period where Plaintiff [Kukich] did not agree to it prior to purchasing his Microwave."[56]

Now, in seeking reconsideration, Plaintiffs argue that a section of Maryland's Universal Commercial Code, § 2-316.1(2), prevents Electrolux from reducing the limitations period in the first place.[57]  Plaintiffs had made a similar argument – but before this case had been consolidated, and well before the original motion to dismiss briefing that is the subject of Plaintiffs' motion for reconsideration.[58]  Plaintiffs' arguments opposing the original motion to dismiss do not mention or implicate § 2-316.1(2).[59]

---

[54]   *See* Doc. 174 at ¶¶ 11, 98, 100.
[55]   *See* Doc. 227 at 19-20, 32-34.
[56]   Doc. 231 at 27-28.
[57]   Doc. 253 at 5.
[58]   *See* Doc. 127 at ¶ 7.
[59]   *See* Doc. 231 at 27-28.

Plaintiffs, when they opposed the original motion to dismiss Mauro's claims, argued only that equitable estoppel applied: "[t]he allegations in the Complaint establish that Defendants' misrepresentations and omissions prevented Mauro from discovering the Microwave's defect and commencing the action within the applicable limitations period."[60]  Now, in seeking reconsideration, Plaintiffs make arguments that the reduction to the limitations period "does not satisfy the strict standards to modify implied warranties under New York law," the reducing term was not "conspicuous" under New York law, and Lowe's and Mauro did not make an "original agreement" to reduce the statute of limitations.[61]  Again, Plaintiffs' arguments opposing Electrolux, Lowe's, and Modesto's original motion here do not mention or implicate these later arguments.[62]

A "motion for reconsideration may not be used to present a new legal theory for the first time, to raise new arguments that could have been made in support of the original motion,  . . . and should not ask the court to rethink a decision that it has already made."[63]  Here, as I have shown above, Plaintiffs are raising new arguments that they could have made in support of their original opposition to Electrolux, Lowe's, and Modesto's motion to dismiss.[64]  Therefore, Plaintiffs'

---

[60]  Doc. 231 at 35.
[61]  Doc. 253 at 8-11.
[62]  Doc. 231 at 35.
[63]  *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 475 (M.D. Pa. 2020) (citations omitted).
[64]  Plaintiffs' contention that they already raised Kukich's argument is unavailing.  That was a different posture of the case, and the Court did not consider these pre-consolidation arguments in deciding the motion to dismiss briefing that is the subject of this instant motion

motion for reconsideration, to the extent that it is founded on these new arguments, is invalid.[65]

### G.   Mauro's New York General Business Law Claims Against Midea America

In its original motion to dismiss, Midea America brought a statute of limitations challenge against Mauro's General Business Law claims.[66]  In the January 2020 Opinion, I found that because of the specific chronology here – Plaintiffs discovered Midea America's identity before the statute of limitations at issue had expired – I could not apply the doctrines of equitable tolling or of fraudulent concealment.[67]

In their motion for reconsideration, Plaintiffs essentially restate the argument that they already made in their original motion to dismiss briefing.[68]  Plaintiffs will not receive a second bite of the apple here.  Plaintiffs' motion for reconsideration is

---

for reconsideration.  *See Church & Dwight Co. v. Abbott Labs.*, 545 F. Supp. 2d 447, 450 (D.N.J. 2008) ("Generally, the moving party is not entitled to raise new arguments that could have been addressed in the original moving and responsive papers.").

[65]   As I have shown above, Plaintiffs' previous arguments did not "directly implicate[]" the arguments they now bring before the Court.  Thus, Plaintiffs' citation to *York Int'l Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 361 (M.D. Pa. 2015), is inapposite.  Plaintiffs' citation to *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001), is not convincing.  *Bowers* involves not a motion for reconsideration, but a motion for reargument under the Local Civil Rules for the District of New Jersey.  Further, the court in *Bowers* reaffirms that "such motions are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers."  *Id.* (emphasis in original).

[66]   *See* Doc. 219 at 25-30.

[67]   *See* Doc. 247 at 32-33.

[68]   *See* Doc. 253 at 12.

denied with respect to my previous ruling on Mauro's General Business Law claims against Midea America.

### H.    Mauro's New York General Business Law Claims Against Electrolux and Lowe's

In the January 2020 Opinion, I found that, with respect to Mauro's New York General Business Law claims against Electrolux and Lowe's, Mauro had "failed to allege the requisite causal connection."[69]  The fact that drove my analysis was that Mauro had not pled that he had looked at any particular Electrolux document before purchasing his Microwave.[70]  Mauro needed to plead this in order to satisfy the General Business Law causation requirement.  This requirement is "essential," even in a case like this where Plaintiffs are pleading a violation due to an omission.  "The plaintiff must show that the defendant's material deceptive act caused the injury."[71]

Plaintiffs' arguments for reconsideration here bring them no closer to satisfying the causation requirement.  They still have not pled that Electrolux's omission *caused* Mauro's economic injuries here.  Put another way, it is not enough for Plaintiffs to plead that Electrolux made a certain statement that contained a misleading omission.  Plaintiffs must go a step further and plead that this omission was the cause of their injury.[72]

---

[69]   Doc. 247 at 41.

[70]   *Id.*

[71]   *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014).

[72]   *See Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52 (N.Y. App. 2004).

However, as above with Mendoza and Hunt, my January 2020 Opinion appears to be the first time that a court has confronted the sufficiency of Mauro's New York General Business Law claims against Electrolux and Lowe's. Given the lenient and permissive standards around amendment, it would not be futile to permit Plaintiffs leave to amend their complaint with respect to the sufficiency of Mauro's New York General Business Law claims against Electrolux and Lowe's.[73]

Therefore, the Court's decision to dismiss these claims with prejudice, without granting Plaintiffs leave to amend, was therefore "a clear error of law" that the Court needs to now correct. The Court grants Plaintiffs leave to amend their complaint with respect to the sufficiency of Mauro's New York General Business Law claims against Electrolux and Lowe's.

## I.      Certification for Interlocutory Appeal

Plaintiffs move the Court to, in the alternative to reconsideration, certify the accompanying Order here for interlocutory appeal to the Third Circuit.[74]

As my analysis above articulates, Plaintiffs' motion for reconsideration involves the Court applying settled principles of law. And the conclusions that I have developed above "rest[] on the application of [] long-established principles . . . to the unique facts of this case." Accordingly, the accompanying Order here "does not involve a pure question of law that would warrant a discretionary

---

[73]  *See* footnote 53 *supra.*
[74]  *See* Doc. 250 at 2.

interlocutory appeal."[75]  The Court denies Plaintiffs' motion to, in the alternative, certify the accompany Order here for interlocutory appeal.

### J.    Procedural History and Legal Standards for Plaintiffs' 60(b)(6) Motion

In my July 28, 2015 Memorandum Opinion ("the July 2015 Opinion"), I dismissed, with prejudice, Rice's Pennsylvania law tort claims founded on theories of strict liability and negligent failure to warn, with accompanying pure economic loss.[76]

My reasoning was that the economic loss doctrine compelled the dismissal of "any claims for pure[] economic loss" in this case.[77]  I explained that Pennsylvania appellate courts' reasoning had "evidence[d] a clear intent to bar any tort recovery for economic loss, instead opting to encourage recovery through readily available warranty claims, thereby preventing overlapping claims."[78] Finally, citing Third Circuit precedent, I ruled that "[e]ven if a different reading of the economic loss doctrine may be plausible, this Court will 'opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently.'"[79]

---

[75]   *Koken v. Pension Benefit Guar. Corp.*, 381 F. Supp. 2d 437, 442 (E.D. Pa. 2005); *see also McFarlin v. Conseco Servs. LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("The antithesis of a proper § 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case.") (cleaned up).

[76]   Doc. 24 at 7-12.

[77]   *Id.* at 8.

[78]   *Id.* at 11.

[79]   *Id.* at 11-12.

Plaintiffs now move for relief from final judgment under Federal Rule of Civil Procedure 60(b)(6).  Plaintiffs assert that a recent Supreme Court of Pennsylvania decision in the case of *Dittman v. Univ. of Pittsburgh Med. Ctr.*[80] presents the Court with an "intervening change of decisional law" that "constitutes an extraordinary circumstance" meaningful enough to compel reinstatement of Rice's dismissed tort claims.[81]  Plaintiffs request that the Court reinstate these claims, and Plaintiffs seek leave to amend these claims.[82]

"[I]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."[83]  However, "a supervening change in governing law that calls into question the correctness of the court's judgment may . . . constitute such an extraordinary circumstance justifying the granting of a Rule 60(b)(6) motion."[84]

### K.    Analysis of Plaintiffs' 60(b)(6) Motion

The Court assumes, without deciding, that *Dittman* represented a "supervening change in governing law" with respect to the general body of Pennsylvania tort law around the economic loss doctrine.[85]  But even with that assumption in place, for reinstatement to issue, *Dittman* must also have called into

---

[80]   196 A.3d 1036 (Pa. 2018).
[81]   Doc. 264 at 2-3.
[82]   *See* Doc. 265 at 9.
[83]   *Agostini v. Felton*, 521 U.S. 203, 239 (1997).
[84]   *United States v. Enigwe*, 320 F. Supp. 2d 301, 308 (E.D. Pa. 2005) (internal citations omitted); *see also Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014).
[85]   *See, e.g.*, *Amig v. Cty. of Juniata*, 432 F. Supp. 3d 481, 488 (M.D. Pa. 2020).

question the correctness of the July 2015 Opinion and the accompanying Order. This Court is not convinced that *Dittman* presents such a disruption.

In the July 2015 Opinion, I reasoned that the economic loss doctrine would operate to bar "all economic losses resulting solely from damage to the product itself."[86]  Crucial to my reasoning was the relationship between the plaintiff consumer, Rice, and the defendant manufacturer, Electrolux.[87]  I noted that warranty law already provided consumers such as Rice with a suitable remedy, and that an accompanying tort claim for pure economic loss would result in "overlapping claims."[88]

The Supreme Court of Pennsylvania's decision in *Dittman* sounds in harmony with my reasoning in the July 2015 Opinion.  In *Dittman*, the Supreme Court of Pennsylvania explained that if a plaintiff's claim for economic damages was founded on a "legal duty exist[ing] independently from any contractual obligations between the parties," the economic loss doctrine would not bar that claim.[89]  This is consonant with my understanding of the economic loss doctrine's contours that I expressed in the July 2015 Opinion: the proper avenue for a consumer's contract-based claims for economic damages flowing from a defective product is warranty law, whereas a plaintiff can bring tort-based claims for

---

[86]   Doc. 24 at 10.
[87]   *Id.* at 9-11.
[88]   *Id.* at 11.
[89]   196 A.3d at 1056.

economic damages that stand independent from a consumer-manufacturer relationship.

The "equitable relief" of a Rule 60(b)(6) motion "will be granted only under extraordinary circumstances."[90]  The Court has considered the equitable arguments that presented for relief.[91]  These arguments are not availing.[92]

I have taken into account and analyzed the particulars of Plaintiffs' multifaceted, complex case.  The totality of circumstances counsels against the grant of Rule 60(b)(6) relief.  Given the insufficiency of these equitable arguments, coupled with the ultimately inconsequential impact of *Dittman* on the July 2015 Opinion, the Court finds that Rule 60(b)(6) relief is not warranted in this case. Plaintiffs have not shown "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."[93]

Further, in accordance with the July 2015 Opinion and the Court's accompanying Order of July 28, 2015, each of which clearly prohibit Rice from recovering in tort for pure economic loss that resulted due to damage to her microwave, the Court rules that Rice's negligence claim within the Consolidated

---

[90]  *Cox*, 757 F.3d at 122.

[91]  *See, e.g.*, Doc. 265 at 8-9.

[92]  For example, as the Court expressed above, Plaintiffs will receive a chance to amend their complaint again—though the amendment will not cover Rice's Pennsylvania law tort-based claims for pure economic loss.

[93]  *See, e.g.¸ Cloud Satchel LLC v. Amazon.com, Inc.*, No. CV 13-941-SLR, 2017 WL 1197677, at *2 (D. Del. Mar. 30, 2017); *S.E.C. v. Holley*, No. CIV.A. 11-0205 DEA, 2015 WL 5554788, at *4 (D.N.J. Sept. 21, 2015).

Amended Complaint's *Rice-Kukich* Action Count Seven is dismissed with

prejudice, to the extent that this claim is premised on pure economic loss.[94]

## III.   CONCLUSION

As I have detailed above, Plaintiffs' motion for reconsideration is granted in

part and denied in part.  Plaintiffs' motion for Rule 60(b)(6) relief is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[94]   The Court has the power to, *sua sponte*, certify its Order on Plaintiffs' Rule 60(b)(6) motion for interlocutory appeal.  *See Amerisourcebergen Drug Corp. v. Meier*, No. CIV.A.03-CV-6769, 2005 WL 2645000, at *3 (E.D. Pa. Oct. 14, 2005).  But the Court will decline to do so in this case, given that Plaintiffs' Rule 60(b)(6) motion revolves around state law issues.  *See Nemours Found. v. Manganaro Corp., New England*, 878 F.2d 98, 101 (3d Cir. 1989); *see also Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 210 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3d Cir. 1998).